THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-ENTS, *v.* HUGH THOMPSON, APPELLANT.

*Navigable waters within the State — power of the State to grant an exclusive right to raise oysters therein — it may exercise this right through town officers — 1868, chap. 734.*

Chapter 734 of 1868 authorized any inhabitant of the towns of Gravesend and Flatlands, upon complying with the terms of the act, to plant oysters under the public waters within their respective towns, and to have the exclusive right in the oysters so planted and the exclusive use of the beds. Such privilege was not to be exercised, however, without the written permit of the justice of the peace and the supervisor of the respective towns, which permits were to be issued in the manner and form prescribed by the act. Any person other than the one named in the permit, who should take any oysters from such beds or disturb the same, was made liable to a penalty of fifty dollars, to be recovered by the holder of the permit, and to be adjudged guilty of a misdemeanor and punished by fine or imprisonment, or both. The beds were within the territories of the respective towns, but the said towns had no exclusive right to the fisheries within the waters over them, which formed a part of the navigable tide waters within the State of New York.

Upon an appeal by the defendant from a judgment convicting him of a violation of the act:

*Held,* that the State had the power to grant to the inhabitants of the towns the exclusive right to use the said lands and the waters over the same, for the purpose of planting oysters therein and removing them therefrom.

That its right so to do might, if necessary, be sustained as the lawful exercise of its police power.

That it might properly exercise this power through the town officials, as was done in this case.

That the act was valid and the conviction should be sustained.

APPEAL from a judgment of the Court of Sessions of Kings county, convicting the defendant of a violation of chapter 734 of 1868, and sentencing him to pay a fine of twenty-five dollars. The act provided that it should be lawful for any inhabitant of the towns of Gravesend and Flatlands in Kings county, who should have been such inhabitant for the six months immediately preceding, upon complying with the terms of the act, to plant oysters under the public waters within their respective towns, and to have the exclusive property in the oysters so planted and the exclusive use of such oyster beds. The act further provided that such privilege should not be exercised without the written permit of the justice of the peace and the supervisor of the respective towns, and prescribed the conditions upon which, and the manner and form in which the permits should be issued. Any person who took any oysters from such bed or disturbed the same, was made liable to a penalty of fifty dollars, to be recovered by the person to whom such a permit had been given, or his legal representatives, and to be adjudged guilty of a misdemeanor and punished, therefore, by fine or imprisonment, or both.

*Morris & Pearsall,* for the appellant.

*Isaac S. Catlin,* district attorney, for the respondent.

PRATT, J.:

The defendant was indicted for a misdemeanor under chapter 734 of the Laws of 1868, in that he had taken oysters from and disturbed oysters from a certain oyster bed in Pumpkin Patch channel, a part of Jamaica bay, which oysters had been planted by one Vreeland, to whom a license by the authorities of the town of Flatlands had been granted. The defense was that the oyster bed was a part of the public domain, being a part of the tide-waters of Jamaica bay; that defendant was raking for *clams* upon a natural *clam bed* which existed at that point, that he had the right there to rake for clams in the public waters, and that the disturbance of the oysters was a necessary incident of his right to rake for clams. It is conceded that the object of the proceeding is to determine the validity and force of the license under the act of 1868, and the rights of the licensee as against the public.

It was admitted that this oyster bed was within the town of Flatlands, and hence within the territory of the State of New York. It is not pretended that the town of Flatlands ever obtained any exclusive right to the fisheries within the waters which lie within its territories. There was no evidence of any grant to the town, and no presumptive right is claimed in its behalf. The case therefore shows that these waters were a part of the navigable tide-water within this State. Assuming the power, could the State exercise it, through the supervisor and justices of the peace of the town. We think the first question must be answered in the affimative.

The opinion of the late Ch. J. CHURCH, with the concurrence of all his associates (see *Trustees of the Town of Brookhaven* v. *Strong*, 60 N. Y., 56), indicates very clearly that at common law the king had the right to grant to an individual or to the inhabitants of a town the lands under water and the exclusive right to fish in the waters flowing over the same. We fail to see why the State has not exercised the same right as the king could have exercised in this respect. We find no prohibition or limitation upon that power. The State might have ceded the entire *land and water* to the town or to individuals, subject only to the superior right to use the navigable waters for the purposes of commerce and navigation. (*Rogers* v. *Jones*, 1 Wend., 237; approved 60 N. Y., 65.) It is only where it undertakes to grant the exclusive right to fisheries disconnected with any right upon or connected with the soil or in disregard of the rights of owners of the soil, that there appears to be any invasion of private right. Even in that case it is the private right either of the owner of the soil under or adjacent to the waters which is disregarded or invaded. Why may not the State, as the owner of the soil and waters, subject to the public right of commerce and navigation, grant away the whole or any part of its own aquatic domain? If it may grant the land and the water, why may it not grant the land without the water or its right in the water without the land. This would seem especially plain for the purposes of planting trees, erecting or extending docks, etc., and why not for planting that kind of product which although classed as fish is nevertheless a resident and dependent upon the soil almost as much as grain sown upon agricultural lands. We cannot find the precise points decided of an *original grant by the State*, but it is quite plain

that the State has steadily since its organization made analogous grants of land under water and ratified old claims of that nature. The authority for such acts is too old to be questioned. If these views are correct, it would seem to follow that the State might exercise the power of leasing these lands and its right in the waters, especially for purposes which chiefly affect the soil under the water. It could certainly authorize dumping earth at any particular point and raising an island. It could authorize the occupation of bars or such other acts as might develop them, why not authorize the use of the bottom for substantial submarine agriculture with the incidental rights of penetrating the waters to reap the crop. Another view of the subject is that it is simply the exercise of police power.

We come then to the second question : Could the State properly exercise this power through the town officials ? We fail to discover any restriction or limitation on this subject. There was no delegation of the power to determine whether or not the land and waters should be so used, but merely the selection of officers through and by whom the State should attest the fact that it had leased and the qualification of the lands for the purposes of the lease, *i. e.*, the extent in acreage and whether or not there was a natural oyster bed.

Besides these the State is really by this act following a policy for the promotion of the public good and the benefit of all its inhabitants. It is encouraging oyster culture, affording special inducements to those who will engage in the industry upon the public domain. It protects them from annoyance and intrusion by others upon the special field of their operations — the bottom. It is simply a police regulation, at most an exercise of police power. Any other reasoning would lead to the conclusion that the public interest in fish culture for the purposes of food was wholly subservient to the individual right of each citizen to the mere pastime of catching the fish. The method by which the State shall develop its resources, especially upon the public domain, must be a matter within the discretion of the representatives of her people, the legislature. We fail to see why the State should not select these town officers to exercise this right quite as readily as it could have selected new officers for that purpose.

Who would deny that the State through its own constabulary might protect its lessees and licensees in the limitations upon fishing,

quite as properly as it can limit the methods of taking fish or game at particular seasons of the year. The State might well prefer to encourage the planting of oysters, rather than to preserve natural clam beds, and that is an essential feature of the bed in question.

We think the Act in question was clearly within the powers of the legislature and that it is valid. If these views are correct it follows that the judgment and conviction must be affirmed.

Present — BARNARD, P. J., DYKMAN and PRATT, JJ.

Conviction and judgment affirmed.